UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JOSE PEREIRA,
                Plaintiff,

    -against-                                **MEMORANDUM & ORDER**

MICHAEL ASTRUE, Commissioner        Civil Action No. 09-1024
of Social Security                                (DRH)
                Defendant.
----------------------------------------------------X

**APPEARANCES**:

**For Plaintiff**:
Jeffrey Delott, Esq.
366 North Broadway, Suite 410
Jericho, NY 11753

**For Defendant**:
Benton J. Campbell
United States Attorney for the Eastern District of New York
610 Federal Plaza,
Central Islip, NY 11722
By:    Robert B. Kambic, AUSA

**HURLEY, Senior District Judge**:

        Plaintiff, Jose Pereira, ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the "Commissioner" or "Defendant") which denied his claim for disability benefits. Presently before the Court are Defendant's motion for remand for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), and Plaintiff's cross-motion for judgment on the pleadings. Both parties seek remand, but Plaintiff seeks a remand solely for the calculation of benefits. For the reasons discussed below, the decision of the Commissioner is reversed and the matter is remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**Background**

I.     **Procedural Background**

Plaintiff applied for Social Security Disability and Supplemental Security Income benefits ("SSD") on January 4, 2006, alleging he became disabled on January 8, 2004. (Transcript (hereafter "Tr.") 13.) The claim was denied initially on July 3, 2006. (Tr. 26, 28-29.) Plaintiff timely requested a hearing before an administrative law judge ("ALJ") and a hearing was held before ALJ Seymour Raynor, at which Plaintiff appeared represented by counsel. (Tr. 12, 338A-359.) The ALJ issued a decision on July 1, 2008, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 9-16.) Plaintiff requested review by the Appeals Council ("AC"). (Tr. 8.) By notice dated February 18, 2009, the AC denied Plaintiff's request, rendering the ALJ's decision as the "final decision" of Defendant. (Tr. 2-4.)

II.    **Factual Background**

   A.    **Non-Medical Evidence**

Plaintiff was born on March 4, 1956 and was 52 years old at the time of the hearing. (Tr. 17, 342.) He was born in El Salvador, where he received no formal education, and migrated to the United States in 1987. (Tr. 13, 342.) He speaks very little English, and reads and writes very little Spanish. (Tr. 342-343.) Plaintiff worked from 1988 through January 2004 as an aircraft plater. (Tr. 342-346.) On August 12, 2003,[1] Plaintiff was pushing a cart at work, when he slipped and fell injuring his back, which injury caused him to stop working. (Tr. 80, *see also* Tr. 344.) He has not worked since January 8, 2004. (*Id.*) Plaintiff receives Worker's

---

[1] The ALJ's decision erroneously states that Plaintiff was injured on the job pushing a heavy cart on Oct. 12, 2003. (Tr.13.)

Compensation benefits in the amount of $270.00 every week. (Tr. 354, 35.)

Plaintiff testified before the ALJ as follows. He spends his day "walking here and there, sitting down" while his wife takes care of the house. (Tr. 349.) He is unable to help with chores around the house: no shopping, cleaning, cooking, laundry, or washing dishes, although he is able to sweep the kitchen. (Tr. 349, 353-54.) He pays bills, goes to the ATM and the post office, but he experiences pain if he walks, sits, or stand for more than thirty minutes. (Tr. 348-49.) He can perform personal care such as showering, shaving and dressing. (Tr. 353, 357.) He can eat with a knife and fork, hold a cup of coffee, open the doors to his house, car, and closet, open drawers, pick up coins from a table, and talk on the phone. (Tr. 355-57.) He can lift 10 to 15 pounds through the constant pain (Tr. 349), which is being treated by therapy and medication, which causes drowsiness. (Tr. 346-48, 358.) Plaintiff wore a back brace but had not worn it within the 23 days prior to the hearing. (Tr. 357.)

**B.      Medical Evidence**

    **1.      J.R. Medical and Diagnostics[2]**

The record shows that Plaintiff started treatment at J.R. Medical and Diagnostics ("JRM&D") on December 30, 2003, where he was initially seen by Dr. Jose I. Rodriguez. (Tr. 83-90.) The physical examination showed that the Plaintiff did not have antalgic gait.[3] It also noted that Plaintiff had diminished patellar and achilles reflexes, normal coordination and sensation. (Tr. 85.) An examination of his lower back revealed a decreased range of motion and

---

[2] Also known as J.R. Medical & Pain Management, and Health 1 Medical.

[3] An "antalgic" gait is a limp adopted so as to avoid pain on weight-bearing structures, characterized by a very short stance phase. (http://medical-dictionary.thefreedictionary.com/)

tenderness on palpation. (Tr. 87.) Dr. Rodriguez diagnosed low back syndrome, Lumbar Radiculopathy[4], muscle spasms, and prescribed Skelaxin© and Motrin©. (Tr. 90.) Dr. Rodriguez's report to the Workers' Compensation Board indicated that Plaintiff was totally disabled from regular duties of work. (Tr. 80-82.) On April 12, 2004, a nerve conduction exam was performed on the Plaintiff and revealed evidence of a right sided L5-S1 radiculopathy. (Tr. 123-26) Plaintiff was referred for a Magnetic Resonance Imaging ("MRI") of the lumbosacral spine, performed the next day, which showed that at the L3-L4 and L4-L5 levels, there are lateral disc herniations which narrowed the neural foramen. (Tr. 121.)

Dr. Rodriguez continued to treat the Plaintiff until 2005 with the following dates and the diagnoses: (1) May 11, 2004: the Plaintiff's pain was rated 9/10, Celebrex© was prescribed. Diagnosis: disc disp. without myleopathy, low back syndrome, and radiculopathy. Total disability assessed. (Tr. 327-29.); (2) June 9, 2004: Plaintiff's pain was 9/10. Celebrex was prescribed. Diagnosis: disc disp. without myleopathy, radiculopathy, muscle spasm, and parasthesia. (Tr. 323-25.); (3) July 12, 2004: Plaintiff's pain was 9/10. Celebrex was prescribed. Diagnosis: disc disp. without myleopathy, radiculopathy, muscle spasm, and parasthesia. (Tr. 318-20.); (4) August 12, 2004: Plaintiff's pain was 8/10. Celebrex was prescribed. Diagnosis: disc disp. without myleopathy, low back syndrome, radiculopathy, muscle spasm, and myofacial pain syndrome. (Tr. 314-16.); (5) September 21, 2004: Plaintiff's pain was 7-8/10. Celebrex was prescribed. Diagnosis: disc disp. without myleopathy, radiculopathy, muscle spasm, and myofacial pain syndrome. (Tr. 308-10.); (6) October 27, 2004: Plaintiff's pain was 8/10. Celebrex

---

[4] Lumbar Radiculopathy is a compression and irritation of nerve roots in the lumbar region, with resultant pain in the lower back and lower limbs. (http://medical-dictionary.thefreedictionary.com/)

4

was prescribed. Diagnosis: disc disp. without myleopathy, low back syndrome, radiculopathy, muscle spasm, and myofacial pain syndrome. (Tr. 305-07.); (7) November 24, 2004: Plaintiff's pain was 7-8/10. A different medication was prescribed. Diagnosis: disc disp. without myleopathy, low back syndrome, radiculopathy, muscle spasm, and parasthesia. Total disability assessed. (Tr. 302-04.); (8) December 29, 2004: Plaintiff's pain was 8-9/10. Diagnosis: disc disp. without myleopathy, low back syndrome, radiculopathy, muscle spasm, and parasthesia. Total disability assessed. (Tr. 299-301.) (9) February 1, 2005: Plaintiff's pain was 6/10. Diagnosis: disc disp. without myleopathy, low back syndrome, radiculopathy, muscle spasm, and parasthesia. Total disability assessed. (Tr. 296-98.)

Dr. Durant, a board certified orthopedist at JRM&D examined the Plaintiff on April 16, 2004. (Tr. 331.) His diagnosis was low back pain, herniated lumbar disc, and lumbar radiculopathy. (Tr. 332.) Dr. Durant observed that the Plaintiff walked with a limp, had muscle spasms and positive leg raises involving the right lower extremity, had a satisfactory range of motions for the cervical spine, upper and lower extremities as well as full muscle strength. (Tr. 331.) X-rays of the lumbosacral spine showed no evidence of fractures or dislocations and no evidence of blastic or lystic lesions, but found tenderness in the paralumbar spinal muscles associated with muscle spasms with forward flexion of 30 degrees and positive straight leg raising on the right at about 60 degrees. (Id.) Dr. Durant opined that Plaintiff was currently disabled and unable to work. (Tr. 333.)

On August 26, 2004, Dr. Durant re-examined Plaintiff and found him still disabled and unable to work. (Tr. 312-13.) Physical examination showed that Plaintiff was unable to walk on his heels and toes, and had a right lower extremity limp. Forward flexion of

5

the lumbosacral spine was 20 degrees, with positive straight leg-raising at about 50 degrees. Deep tendon reflexes were found to be physiologic throughout.

From February 2005 though August 2008, plaintiff was treated by Drs. Stephanie Bayner and Gary DiCanio, both of whom concluded that plaintiff was totally disabled. (Tr. 127-223, 250-301.) Dr Bayner's findings included low back pain radiating down the right lower extremity, bilateral tenderness, reduced range of motion right lower extremity muscle atrophy, and an antalgic gait. (Tr. 250-301.) Dr. DiCanio's clinical findings were similar and included: lumbosacral paraspinal muscle spasm, tenderness and reduced range of motion, positive bilateral straight leg raises, right quadriceps and hamstring atrophy, right lower extremity weakness and hyperesthesia at the L4-S1 dermatones and 8 out of 10 back pain. (Tr. 127-80.) After his examination of Plaintiff on June 10, 2008, Dr. DiCanio concluded Plaintiff was limited to lifting and carrying 15 pounds, but only 8 pounds occasionally and 6 pounds frequently, and to standing, sitting, and walking for a half hour per day. (Tr. 335.)

### 2. Dr. Vartkes Khachadurian – Orthopedic Surgeon

Dr. Vartkes Khachadurian, a board certified orthopedic surgeon, initially examined the Plaintiff in connection with the Plaintiff's Workers Compensation Claim, on March 12, 2004. (Tr. 117.) Dr. Khachadurian noted on his report that Plaintiff could ambulate independently and had a heel to toe gait. Normal sensation and normal power of lower extremities was found as well as negative straight and well leg testing in sitting position. (Tr. 119.) However, decreased lumbar motion and positive straight leg testing on supine position was also found. (Id..) Dr. Khachadurian diagnosed lumbar sprain, posttraumatic, superimposed on pre-existing history of lower back syndrome with a mild right lower extremity radiculitis. (Id.)

He opined that Plaintiff was capable of performing work activity not requiring bending, lifting and carrying over 20 pounds, but could not perform high speed of work or work requiring standing for more than two hours. (Tr. 119-20.)

Dr. Khachadurian examined the Plaintiff again on July 23, December 17, 2004 and September 23, 2005 (Tr. 112, 107, 103), and reported similar findings. (See Tr. 114, 108-9, 104-05.) The diagnosis on July 2004 was lumbar sprain, MRI evidence of L3-L4 and L4-L5 disc herniation with minimal radiculitis to right lower extremities, and none on left lower extremity. (Tr. 114.) The December 2004 diagnosis was post lumbar sprain, posttraumatic with right lower extremity radiculitis with no evidence of neuromotor deficits. (Tr. 109.) After the July and December 2004 examinations, Dr. Khachadurian opined that Plaintiff could perform modified work activity not requiring carrying and lifing over 40 pounds, not requiring constant bending, pushing, and pulling, and not requiring constant work on his feet for more than one hour at a time. (Tr. 109, 114.)

### 3. Dr. Mathew Illikal[5]

On April 11, 2006 Dr. Illikal conducted an consultative examination of Plaintiff. (Tr. 91-94.) He diagnosed musculoligamentous pain of the lumbosacral spine, and right leg pain. He observed Plaintiff mildly limping and with moderate limitation of the range of lumbosacral movement, as well as decreased right lower extremity movement. (Tr. 92-93.)

---

[5] The record does not indicate whether Dr. Illikal is board certified in any speciality. According to Plaintiff, there is no doctor named Mathew Illikal, although there is a Dr. Mathew Illickal who is neither an orthopedist nor board certified in any specialty.

## Discussion

### I. Standard of Review

#### A. Review of the ALJ's Decision

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court may set aside a determination of the ALJ only if it is "based upon legal error or is not supported by substantial evidence." ***Rosa v. Callahan***, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and citation omitted). "Substantial evidence is 'more than a mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'" *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Furthermore, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the case de novo. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted). Thus the only issue before the Court is whether the ALJ's finding that Plaintiff was not eligible for disability benefits was "based on legal error or is not supported by substantial evidence." *Rosa*, 168 F.3d at 77.

#### B. Eligibility for Disability Benefits

To be eligible for disability benefits under the Social Security Act (the "SSA"), a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520. This Circuit has described the procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa*, 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

## C. The Treating Physician Rule

Social Security regulations require that an ALJ give "controlling weight" to the medical opinion of an applicant's treating physician so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79. The "treating physician rule" does not apply, however, when the treating physician's opinion is inconsistent with the other substantial evidence in the record, "such as the opinions of other medical experts." *Hallora*n, 362 F.3d at 32; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). When the treating physician's opinion is not given controlling weight, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion." *Halloran*, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include: (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Social Security Administration that tend to support or contradict the opinion. Id. § 404.1527(d)(2)(I-ii) & (d)(3-6); see also Halloran, 362 F.3d at 32. Furthermore, when giving the treating physician's opinion less than controlling weight, the ALJ must provide the claimant with good reasons for doing so. 20 C.F.R. § 404.1527(d)(2).

In addition, it is clearly stated law in the Second Circuit that "while a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence." *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (emphasis added); *see also*

10

*Rivera v. Sullivan*, 923 F.2d 964 (2d Cir. 1991) (reviewing Second Circuit law on retrospective diagnosis and reversing denial of benefits where retrospective diagnosis of treating physician not given sufficient weight with regard to degenerative condition).

Finally, the ALJ may not reject the treating physician's conclusions based solely on inconsistency or lack of clear findings without first attempting to fill the gaps in the administrative record. *Rosa*, 168 F.3d at 79. "It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding,'" even if the claimant is represented by counsel. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Butts v. Barhart,* 388 F.3d 377, 386 (2d Cir. 2004) ("'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'") (quoting *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001)), amended on other grounds on rehearing, 416 F.3d 101 (2d Cir. 2005). Specifically, this duty requires the Commissioner to "seek additional evidence or clarification" from the claimant's treating sources when their reports "contain[ ] a conflict or ambiguity that must be resolved" or their reports are "inadequate for [the Commissioner] to determine whether [claimant] is disabled." 20 C.F.R. §§ 404.1512(e), (e)(1). The Commissioner "may do this by requesting copies of [the claimant's] medical source's records, a new report, or a more detailed report from [the claimant's] medical source." Id. § 404.1512(e)(1). The only exception to this requirement is where the Commissioner "know[s] from past experience that the source either cannot or will not provide the necessary findings." Id. § 404.1512(e)(2). If the information obtained from the claimant's medical sources is not sufficient to make a disability determination, or the

11

Commissioner is unable to seek clarification from treating sources, the Commissioner will ask the claimant to attend one or more consultative evaluations. *Id*. § 404.1512(f).

## II. The ALJ's Decision

Applying the five-step analysis enumerated in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff satisfied the first two steps to wit: (1) Plaintiff had not engaged in substantial gainful activity since January 8, 2004; and (2) Plaintiff has lumbar spine disorders. The ALJ concluded that Plaintiff did not meet the third step, however, because his impairment did not meet nor equaled in severity any impairment in the Listing of Impairments, Appendix 1, Subpart P, Part 404 of the Regulations. The ALJ next found under the fourth factor that Plaintiff's impairment precluded performance of his past relevant work.

Once the ALJ determined that Plaintiff was not able to perform his past relevant work, the ALJ proceeded to the fifth and final step, viz., whether the Commissioner had established that there was other work Plaintiff could have performed. The ALJ found that Plaintiff has the "residual functional capacity to perform medium work; he can lift and carry fifty pounds occasionally, push and pull without limitation, sit six hours in an eight hour work day and stand and walk six hours in an eight hour work day." (Tr. 15).

After the five-step analysis was completed, the ALJ determined that Plaintiff was not disabled under the SSA. (Tr. 15).

## III. Parties' Arguments

Plaintiff asserts that the ALJ's decision should be reversed for failing to properly evaluate the medical evidence and credibility. According to Plaintiff, "[t]his case centered on the ALJ's finding that Plaintiff is not disabled because he retains the RFC [residual functional

capacity] to perform medium work. The ALJ's RFC finding results from improperly rejecting the opinions of Plaintiff's treating doctors, is not supported by substantial evidence; and was not the product of a function-by-function analysis as required by Defendant's regulations." (Pl's Mem at 8.) Further, the ALJ failed to "explain what doctor stated Plaintiff has a sedentary RFC let alone a light one, or why he gave that doctor's purported opinion greater weight than any treating doctor. Similarly, the ALJ rejected Plaintiff's credibility based upon testimony that supports his functional limitation." (Id. at 9-10.) Plaintiff contends that the matter should be remanded solely for the calculation of Plaintiff's benefits.

      The Defendant concedes that the ALJ failed to properly weigh the medical opinions of both Plaintiff's treating physicians as recommended in the "treating physician rule" and the independent medical examiner, and therefore a remand is needed in order to allow the ALJ to reweigh the evidence. The Defendant asserts that the record is not conclusive on the issue of whether Plaintiff is disabled within the meaning of the SSA and thus an award of benefits would be inappropriate. The Defendant therefore requests the decision of the ALJ be reversed and the matter be remanded to the Commissioner for further proceedings pursuant to the fourth sentence 42 U.S.C. § 405(g).

## IV.   Application of the Governing Law to the Present Case

### A. The Treating Physicians Rule

      The Court agrees with the parties that the ALJ failed to properly apply the treating physicians rule. The ALJ determined that "controlling weight has not been given to the opinion and assessments of the claimant's treating physicians because they are neither supported by the objective clinical findings nor consistent with the other medical evidence of record." (Tr. 20).

13

"When a treating physician's opinion is not given 'controlling' weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive." 20 C.F.R. § 404.1527(d)(2); *Burgess*, 537 F.3d at 129. The ALJ must consider:

> The length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence…, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues.

*Id*. § 404.1527(d)(2)(i)-(ii), (3)-(5). Therefore, the more frequently the treating physician has treated and consulted with the claimant, the more weight the Commissioner will give to the opinion of the treating source. *Burgess*, 537 F.3d at 129. The Commissioner must then consider the above factors and make a determination as to the weight to be assigned to the opinion of the treating physician. *Id*. "Failure to provide such good reasons for not [] crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 130; *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

In the instant case, the ALJ failed to set forth a sufficient anaylsis. He failed to explain his reasons for finding that the treating source opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques or were inconsistent with substantial evidence. He did not identify the inconsistencies between the treating sources opinions and the other medical evidence in the record. Finally, he failed to consider what weight to give to the treating sources' opinions using the six factors listed in 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (3)-(5). The ALJ's failure to follow the treating physician rule is a failure to apply the proper legal standard and is grounds for reversal. *See, e.g., Speruggia v. Astrue*,

2008 WL 818004 at *9 (E.D.N.Y. Mar. 26. 2008). In addition, the ALJ failed to address and weigh all of Dr. Khachadurian's assessments.

The ALJ also "failed to do a 'function by function' analysis of the claimant's capacity to do his past work before classifying the claimant's capacity to work according to exertional categories." *Mardukhayev v. Comm'r of Soc. Secuity*, 2002 WL 603041, * 3 (E.D.N.Y. Mar. 29, 2002).

Finally, the ALJ failed to properly consider the Plaintiff's subjective testimony regarding his symptoms in determining whether he is disabled as required by Social Security regulations. *See* 20 C.F.R. § 404.1529(a). An ALJ should compare subjective testimony regarding the frequency and severity of symptoms to objective medical evidence. Id. § 404.1529(b). If a claimant's subjective evidence of pain is supported by objective medical evidence, it is entitled to "great weight." *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992). However, if a claimant's symptoms suggest a greater severity of impairment than can be demonstrated by the objective medical evidence, additional factors must be considered. *See* 20 C.F.R. § 404.1529(c)(3). These include daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. *Id*.

In addition, SSR 96-7p provides in pertinent part:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record,

15

> and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p (July 2, 1996). Absent such findings, a remand is required. *See, e.g.*, *Schultz v. Astrue*, No. 04-CV-1369, 2008 WL 728925, at *12 (N.D.N.Y. Mar. 18, 2008).

## V. The Matter is Remanded

"Courts have declined to remand if the record shows that a finding of disability is compelled and only a calculation of benefits remains." *Medina v. Apfel*, No. 00-CV-3940, 2001 WL 1488284, at *4 (S.D.N.Y. Nov. 21, 2001); *cf. Schaal*, 134 F.3d at 504 (courts may not award benefits unless the existing record compel solely the conclusion that the claimant has met criteria for establishing disability). "Conversely, if the record would permit a conclusion by the Commissioner that the plaintiff is not disabled, the appropriate remedy is to remand for further proceedings." *Id*. (internal quotation marks and citations omitted). On this record, the Court cannot conclude that there is persuasive proof of disability such that remand would serve no useful purpose. With the proper legal standard applied, the facts could support a conclusion of either disabled or not disabled. Accordingly, the case is remanded to allow the ALJ to reweigh the evidence, developing the record as may be needed. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence. Remand is particularly appropriate where, as here, we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision.") (internal citations and quotation marks omitted). Upon

remand, the ALJ shall set forth his findings with particularity so that the Court may adequately review the record.[6]

### Conclusion

For all of the reasons stated above, this case is remanded for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to close this case.

**SO ORDERED**.

Dated: Central Islip, New York
        May 25, 2010

                                      /s /
                                      Denis R. Hurley
                                      United States District Judge

---

[6] The Court notes that in a letter dated August 11, 2009, Plaintiff objected to a remand for further proceedings before ALJ Raynor asserting that he could not receive a fair hearing before him. While Defendants' addressed this contention in their memorandum, Plaintiff does not. Accordingly, the Court deems the issue waived. Moreover, there is no support in the record for Plaintiff's assertion that he cannot receive a fair hearing before ALJ Raynor.